1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF HAWAII

 3
     UNITED STATES OF AMERICA,    ) CR 05-00185 JMS
 4                                )
                 Plaintiff,       ) Honolulu, Hawaii
 5                                ) March 10, 2006
           vs.                    ) 11:00 a.m.
 6                                )
     (02)  CARMEN FREEMAN,        ) Motion for Withdrawal of Not
 7                                ) Guilty Plea and to Plead
                 Defendant.       ) Anew
 8   _____)

 9                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
10                 UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12
     For the Plaintiff:       MARK A. INCIONG, ESQ.
13                            Office of the United States Attorney
                              PJKK Federal Building
14                            300 Ala Moana Blvd., Suite 6100
                              Honolulu, Hawaii  96850
15
     For the Defendant        CLAYTON K. KIMOTO, ESQ.
16   (02) Carmen Freeman:     Attorney at Law
                              733 Bishop Street, Suite 2302
17                            Honolulu, Hawaii  96813

18   Official Court          Sharon Ross, CSR, RPR, CRR
     Reporter:               United States District Court
19                           300 Ala Moana Blvd., Room C-283
                             Honolulu, Hawaii  96850
20                           (808) 535-9200

21

22

23

24

25   Proceedings recorded by machine shorthand, transcript produced
     with computer-aided transcription (CAT).
```

EXHIBIT "A"

```
 1   FRIDAY, MARCH 10, 2006                          11:00 A.M.

 2            COURTROOM MANAGER:  Criminal No. 05-00185 JMS, United

 3   States of America versus Defendant (02) Carmen Freeman.

 4            This case is called for a hearing on a Motion For

 5   Withdrawal of Not Guilty Plea and to Plead Anew.

 6            MR. INCIONG:  Good morning, Your Honor.  Mark Inciong

 7   for the United States.

 8            THE COURT:  Yes, good morning.

 9            MR. KIMOTO:  Good morning, Your Honor.  On behalf of

10   Carmen Freeman is counsel Clayton Kimoto.

11            THE COURT:  Okay.  Good morning to both of you.

12            All right.  I understand that Ms. Freeman wishes to

13   enter a plea of guilty pursuant to a plea agreement this

14   morning; is that right?

15            MR. KIMOTO:  Correct, Your Honor.

16            THE COURT:  All right.  If you could approach then to

17   the lectern with your client and have a copy of the plea

18   agreement and the second superseding indictment with you.

19            (Counsel and the Defendant approach.)

20            THE COURT:  All right.  Ms. Freeman, I understand you

21   wish to enter a plea of guilty to Count 1 of the second

22   superseding indictment this morning; is that right?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  All right.  Now, before I can accept your

25   guilty plea, there are a number of questions that I must ask
```

11:13AM (line 5)
11:13AM (line 10)
11:14AM (line 15)
11:14AM (line 20)
11:14AM (line 25)

1    you.  I need to do this to make sure your plea is voluntary, to

2    make sure that you understand the rights that you're giving up,

3    that you understand your rights to a jury trial, for instance,

4    and how sentencing works and some other matters.

11:14AM 5        So, it's important that you understand the questions

6    that I ask.  If at any time you don't understand me, just ask

7    me to repeat a question.  I'll be happy to do that.  Do you

8    understand that?

9        THE DEFENDANT:  Okay.

11:14AM 10        THE COURT:  If at any point in time you wish to speak

11   with your attorney, all you need to do is let me know and I'll

12   let you speak to him in private.  In other words, you can have

13   a private conversation with him.  Do you understand that?

14        THE DEFENDANT:  Yes, Your Honor.

11:14AM 15        THE COURT:  All right.  Could we swear the defendant,

16   please?

17        COURTROOM MANAGER:  Yes, Your Honor.

18        (The defendant was sworn to answer truthfully.)

19        THE COURT:  All right.  Now, do you understand that

11:15AM 20   you are now under oath and if you answer any of my questions

21   falsely, those false answers could be used against you in a

22   separate prosecution for perjury or giving a false statement?

23   Do you understand that?

24        THE DEFENDANT:  Yes, Your Honor.

11:15AM 25        THE COURT:  All right.  Now, what is your full legal

4

```
          1   name?

          2           THE DEFENDANT:  Carmen Kuuiini Hatsumi Freeman.

          3           THE COURT:  All right.  You better spell the middle

          4   part of that.

11:15AM   5           THE DEFENDANT:  K-U-U-I-I-N-I, H-A-T-S-U-M-I.

          6           THE COURT:  All right.  And how old are you, ma'am?

          7           THE DEFENDANT:  Pardon?

          8           THE COURT:  How old are you?

          9           THE DEFENDANT:  I'm 21.

11:15AM  10           THE COURT:  And how far did you go in school?

         11           THE DEFENDANT:  Twelfth grade.

         12           THE COURT:  You graduated?

         13           THE DEFENDANT:  No.

         14           THE COURT:  All right.  Where did you go to school?

11:15AM  15           THE DEFENDANT:  Kaimuki High School.

         16           THE COURT:  And can you tell me -- it sounds, talking

         17   to you -- and I assume -- that English is your first language;

         18   is that right?

         19           THE DEFENDANT:  Yes.

11:15AM  20           THE COURT:  All right.  And you're able to read

         21   English as well?

         22           THE DEFENDANT:  Yes, sir.

         23           THE COURT:  So, you were able to read the -- both the

         24   second superseding indictment and the plea agreement in this

11:16AM  25   case and understand both of those?
```

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  Now, are you recently

3    employed?

4          THE DEFENDANT:  Yes, I am.

11:16AM  5          THE COURT:  Where are you working?

6          THE DEFENDANT:  Round Table Pizza at the Hilton

7    Hawaiian Village.

8          THE COURT:  All right.  What do you do there?

9          THE DEFENDANT:  I'm a waitress.

11:16AM 10          THE COURT:  All right.  Now, have you had any drugs --

11    and by that I mean either illegal drugs or prescription

12    drugs -- in the last 24 hours or had any alcohol in the last 24

13    hours?

14          THE DEFENDANT:  No, Your Honor.

11:16AM 15          THE COURT:  Have you ever been treated for any mental

16    illness or addiction to any narcotic drugs of any sort?

17          THE DEFENDANT:  No.

18          THE COURT:  Are you undergoing drug treatment right

19    now?

11:16AM 20          THE DEFENDANT:  Yeah.  Is that the same thing?

21          THE COURT:  Yes.

22          THE DEFENDANT:  Yes, I did, then.

23          THE COURT:  So, that's part of your release

24    conditions; you're undergoing treatment?

11:16AM 25          THE DEFENDANT:  Yes, it is.

1        THE COURT:  All right.  And have you been sober, that

2   is, off drugs, for a period of time now?

3        THE DEFENDANT:  Yes, I have.

4        THE COURT:  Are you thinking clearly here today?

11:16AM  5        THE DEFENDANT:  Yes, I am.

6        THE COURT:  Can you tell me why you're here today in

7   your own words?

8        THE DEFENDANT:  Why I'm here today?

9        THE COURT:  Yes.

11:16AM 10        THE DEFENDANT:  To take the plea agreement -- I mean,

11   pre -- plea agreement and plead guilty.

12        THE COURT:  All right.  Now, have you had enough time

13   to talk to Mr. Kimoto both about your case itself and your

14   decision to plead guilty?

11:17AM 15        THE DEFENDANT:  Yes, I have.

16        THE COURT:  And are you satisfied with the services he

17   has provided on your behalf?

18        THE DEFENDANT:  Yes, I am.

19        THE COURT:  All right.  Now, has anyone made any

11:17AM 20   promise or assurance to you of any kind in an effort to get you

21   to plead guilty other than the agreement you have in the

22   written plea agreement?

23        THE DEFENDANT:  No.

24        THE COURT:  Has anyone threatened you or anyone else,

11:17AM 25   such as a family member or friend, or forced you in any way to

1    plead guilty?

2         THE DEFENDANT:  No.

3         THE COURT:  Are you pleading guilty of your own free

4    will because you are guilty and it's your own decision to do

11:17AM  5    so?

6         THE DEFENDANT:  Yes, I am.  Can I say something?

7         THE COURT:  Yes.

8         THE DEFENDANT:  I don't know how to say it.  I'm not

9    pleading guilty because I am guilty.

11:17AM 10        THE COURT:  All right.  You think you're not guilty of

11   the offense?

12        THE DEFENDANT:  Uh-huh.

13        THE COURT:  So, you don't think you ever possessed the

14   drugs with intent to distribute or anything of that sort?

11:17AM 15        THE DEFENDANT:  I had the possession but not intent to

16   distribute.

17        THE COURT:  All right.  Well, there's two ways to

18   handle this.  One is to go forward to the factual basis just to

19   see if we get through that or we can sort of reach that right

11:18AM 20   now, Mr. --

21        MR. INCIONG:  Whichever the Court prefers, Your Honor.

22        THE COURT:  All right.  Okay.  You're getting there a

23   little bit early; but it is tied into your decision to plead

24   guilty and why you're pleading guilty, Ms. Freeman.  So, I

11:18AM 25   think in order for me to find your plea to be voluntary, we

1    need to get to this issue now, all right?

2         Now, the indictment in this case, second superseding

3    indictment, says that you conspired with others, including

4    Mr. Narabe and a person by the name of Henry Roe, to distribute

11:18AM 5    and possess with intent to distribute 50 grams or more of

6    methamphetamine.  Do you understand that?

7         THE DEFENDANT:  Yes, I do but --

8         THE COURT:  Okay.  And my understanding -- Counsel,

9    tell me if I'm wrong -- the primary role that's alleged is that

11:18AM 10   she accepted Federal Express or Airborne Express parcels of

11   some sort with methamphetamine on behalf of another; is that

12   right?

13        MR. KIMOTO:  That's correct, Your Honor.

14        MR. INCIONG:  That's right.

11:19AM 15   THE COURT:  All right.  Do you admit that you knew

16   there was methamphetamine in those boxes when you received

17   them?

18        THE DEFENDANT:  No.

19        THE COURT:  You didn't know?

11:19AM 20   THE DEFENDANT:  I did not know what was in the boxes.

21        THE COURT:  You didn't know what was in the boxes?

22        THE DEFENDANT:  No.

23        THE COURT:  You never knew that?

24        THE DEFENDANT:  Never knew.

11:19AM 25   THE COURT:  All right.  Counsel, I see no reason to go

1   forward at this point in time.

2          Mr. Kimoto, you can talk to your client, if you wish,

3   but -- further; but if she is not prepared to admit to the

4   offense, whether it's because she's not prepared because, in

11:19AM   5   fact, she's not guilty -- I'm not drawing any conclusions.  But

6   in Federal Court we don't accept pleas unless there's a factual

7   basis admitted to by the defendant.

8          MR. KIMOTO:  Could we just take a brief recess, Your

9   Honor?

11:19AM  10          THE COURT:  Yes, I don't have a problem with that.  I

11   need to go somewhere -- well, I was going to meet someone after

12   we're done.  So, I'll go do that now for about 15 minutes.  And

13   do you want to try to come back in about 15 minutes?

14          MR. KIMOTO:  Yes, thank you.

11:20AM  15          THE COURT:  Mr. Inciong, are you free?

16          MR. INCIONG:  That's fine, Your Honor.

17          THE COURT:  All right.  So, we'll be in recess for

18   about 15 minutes.

19          (Recess at 11:19 a.m., until 11:32 a.m.)

11:37AM  20          THE COURT:  All right.  If you can come back up then,

21   Mr. Kimoto.

22          (Counsel and the Defendant approach.)

23          THE COURT:  And for the record, everyone is here, both

24   counsel and Ms. Freeman.

11:38AM  25          All right.  Where do we stand, Mr. Kimoto?

1          MR. KIMOTO:  We were going through the plea agreement,

2     Your Honor; and basically the Court, I believe, was questioning

3     Ms. Freeman about her plea and whether she was --

4          THE COURT:  Speak into the microphone.  I don't think

11:38AM  5     we can hear.

6          MR. KIMOTO:  Oh, I'm sorry.

7          THE COURT:  Yeah, just pull it over your way.  That's

8     okay.

9          MR. KIMOTO:  -- and whether she was able to plead

11:38AM 10     guilty to this particular count, Your Honor.

11          THE COURT:  All right.  Well, I guess what I'm asking

12     is after your discussions with her, do you believe she's

13     prepared to state a factual basis that would support the plea?

14          MR. KIMOTO:  Yes, I think she's -- well, basically,

11:38AM 15     Your Honor, to stipulate to the factual basis that's in the

16     plea agreement, that might be the simplest.

17          THE COURT:  All right.

18          MR. KIMOTO:  There is a rendition or a narrative in

19     the plea agreement about her responsibility.

11:38AM 20          THE COURT:  Okay.  But what is required for me to

21     accept this plea at a minimum basis, it seems to me, along with

22     some other factors is that she knew this conspiracy involved

23     methamphetamine; and I don't know if she's prepared to admit to

24     that or not.

11:39AM 25          So, that's the question I have, Ms. Freeman, now.  Did

1    you know that the conspiracy -- that you were involved in a

2    conspiracy with the object the intent of distributing drugs?

3              (The defendant and counsel confer.)

4              THE DEFENDANT:  I suspected that there was.  I did not

11:39AM 5    know.

6              THE COURT:  You suspected?

7              THE DEFENDANT:  Yes.

8              THE COURT:  All right.  All right.  Well, let's go

9    through then from here forward; and we'll see where we end up

11:39AM 10   when we get to the factual basis.

11             So, let me ask you again:  Are you pleading guilty of

12   your own free will, ma'am?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All right.  Mr. Kimoto, do you have any

11:40AM 15   reason to doubt your client's competence to enter a valid and

16   voluntary plea here today?

17             MR. KIMOTO:  None whatsoever, Your Honor.

18             THE COURT:  All right.  Now, have you received a copy

19   of the second superseding indictment?

11:40AM 20             THE DEFENDANT:  Yes, I have.

21             THE COURT:  All right.  And let me go through with you

22   the charge you're prepared to plead guilty to.

23             Do you understand that it states that beginning at a

24   date unknown and continuing up and including April 25th of

11:40AM 25   2005, you, a Mr. Narabe and a Henry Roe did knowingly and

1    intentionally combine, conspire -- essentially conspire to

2    distribute and possess with intent to distribute 50 grams or

3    more of methamphetamine?  Do you understand that charge?

4         THE DEFENDANT:  Yes, Your Honor.

11:40AM 5         THE COURT:  All right.  And have you read the overt --

6    what's called the overt acts that are set forth in this second

7    superseding indictment?

8         THE DEFENDANT:  Yes, I have.

9         THE COURT:  All right.  And do you have any questions

11:40AM 10   about any of that?

11        THE DEFENDANT:  No.

12        THE COURT:  You understand the charge?

13        THE DEFENDANT:  Yes, I do.

14        THE COURT:  And you have discussed it with Mr. Kimoto?

11:41AM 15        THE DEFENDANT:  Yes, I have.

16        THE COURT:  All right.  Mr. Inciong, could you put the

17   maximum penalties that apply to this charge on the record,

18   please?

19        MR. INCIONG:  Yes, Your Honor.  The maximum penalties

11:41AM 20   would be as follows:  Life in prison, a $2 million fine, a term

21   of supervised -- I'm sorry -- a $4 million fine, a term of

22   supervised release of up to life, a $100 special assessment,

23   and there is a mandatory minimum term of imprisonment of ten

24   years.

11:41AM 25        THE COURT:  All right.  And a mandatory five-year term

1    of supervised release?

2            MR. INCIONG:  Correct.

3            THE COURT:  Okay.  Mr. Kimoto, do you agree with that?

4            MR. KIMOTO:  Yes, Your Honor.

11:41AM 5            THE COURT:  All right.  Ms. Freeman, do you understand

6    that the maximum penalty you could receive for this offense is

7    life imprisonment and a $4 million fine?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  And do you understand that if you're

11:41AM 10   sentenced to prison, there would be a term of supervised

11   release that would follow and there's a mandatory term of five

12   years and it could be up to life?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  And do you also understand there's a $100

11:41AM 15   special assessment that must be charged against you?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right.  Now, have you entered into a

18   plea agreement with the government?

19           THE DEFENDANT:  Yes, I have.

11:42AM 20           THE COURT:  And do you have a copy of that plea

21   agreement in front of you?

22           THE DEFENDANT:  Yes, I do.

23           THE COURT:  All right.  Could you turn to the last

24   page of that plea agreement?

11:42AM 25           THE DEFENDANT:  (Defendant complies.)

1          THE COURT:  And do you see where it says in print

2    "Carmen Freeman defendant"?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Did you sign above that?

11:42AM  5          THE DEFENDANT:  Yes, I have.

6          THE COURT:  That is your signature?

7          THE DEFENDANT:  Yes, it is.

8          THE COURT:  And you signed that after reading this

9    entire plea agreement and discussing it with your attorney?

11:42AM 10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  And does this agreement

12   reflect the entire agreement between you and the government?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Mr. Inciong, could you please put on the

11:42AM 15   record the essential terms of this plea agreement?

16          MR. INCIONG:  Yes, Your Honor.  Under the terms of the

17   plea agreement the defendant will plead to Count 1 of the

18   first -- or, I'm sorry, the second superseding indictment which

19   charges her with conspiracy to distribute and possess with

11:42AM 20   intent to distribute 50 grams or more of methamphetamine.

21          The government will move to dismiss the remaining

22   counts of that indictment at the time of the defendant's

23   sentencing.

24          THE COURT:  As to her?

11:43AM 25          MR. INCIONG:  As to her, correct.

1          THE COURT:  Okay.

2          MR. INCIONG:  The defendant is entering this plea

3     because she is, in fact, guilty of conspiring to distribute and

4     possess with intent to distribute 50 grams or more of

11:43AM  5     methamphetamine.

6          She further understands that she has been charged with

7     an offense that requires the government to prove beyond a

8     reasonable doubt to the jury that she is responsible for

9     conspiring to distribute and possess with intent to distribute

11:43AM 10     50 grams or more of methamphetamine.

11          The defendant agrees that she is knowingly responsible

12     for conspiring to distribute and possess with intent to

13     distribute 50 grams or more of methamphetamine and waives any

14     and all rights she has to a jury to determine drug type and

11:43AM 15     weight beyond a reasonable doubt.

16          The parties stipulate to the facts which are set forth

17     in Paragraph 8 of the plea agreement at Pages 4, 5 and 6.

18          She further agrees that the -- the defendant further

19     agrees she is responsible for 3,117 grams of actual

11:44AM 20     methamphetamine which is the total amount in the package mailed

21     to her address and delivered there on April 25th, 2005.

22          The defendant further agrees that the drug analysis

23     performed by the DEA laboratory is correct as shown at the

24     bottom of Page 7 of the plea agreement and further agrees that

11:44AM 25     that weight places the defendant at a base offense level of 38

16

1   under the sentencing guidelines.

2       The parties further agree that the defendant played a

3   minor role in this conspiracy, which is the basis of Count 1 of

4   the second superseding indictment, and that a two-level

11:44AM  5   downward adjustment pursuant to guideline Section 3B1.2

6   subparagraph (b) shall apply.  Application of that downward

7   adjustment further results in a four-level decrease in the base

8   offense level which would be from a 38 to a 34 pursuant to

9   guideline section 2D1.1 subparagraph (a) subparagraph (3).

11:45AM  10       The United States further agrees that based on the

11   defendant's entry of this guilty plea in a timely manner, the

12   government will recommend a further one-level reduction in

13   sentencing offense level based on that timely guilty plea.

14       The defendant will also request, pursuant to this

11:45AM  15   agreement, that guideline Section 5C1.2, also known as the

16   safety valve, will be applied to permit the Court to impose a

17   sentence below the statutory minimum.  The government will

18   recommend that application as well, provided that the U.S.

19   Probation Department finds that the defendant meets the

11:45AM  20   requirements of that section and that the defendant has

21   truthfully disclosed to the government all information and

22   evidence regarding her involvement in the offense.

23       The defendant, under this plea agreement, is waiving

24   her right to appeal except in two circumstances:  First, if the

11:45AM  25   Court were to impose a sentence that is above what is found to

1    be the applicable guideline range, the defendant would retain

2    her right to appeal that portion of the sentence.  Similarly,

3    the defendant would reserve her right to collaterally attack

4    that portion of the sentence as well as well as to address any

11:46AM  5    what she perceives to be ineffective assistance of counsel

6    claims.

7          The prosecution will retain its right to appeal the

8    sentence in this matter.

9          The defense -- the defendant also understands that the

11:46AM 10    district court must consider the sentencing guidelines in

11    imposing the sentence but that there is no promise or guarantee

12    as to the applicability or non-applicability of those

13    guidelines.

14          The defendant also understands that the plea agreement

11:46AM 15    will not be accepted or rejected by the Court until there's

16    been an opportunity to pre -- to consider the presentence

17    report.

18          The defendant understands that by pleading guilty, she

19    is waiving a number of rights including all the rights,

11:46AM 20    constitutional and otherwise, to a jury trial including the

21    right to have a jury determine beyond a reasonable doubt the

22    quantity and weight of the controlled substances charged in the

23    indictment.

24          The defendant also is agreeing, pursuant to this plea

11:47AM 25    agreement, to fully cooperate with the United States pursuant

1    to the terms of Paragraphs 21 and 22 as well as 23 of the plea

2    agreement.

3            That summarizes the essential terms, Your Honor.

4            THE COURT: All right. Mr. Kimoto, do you agree with

11:47AM 5    that recitation as to the essential terms of the plea

6    agreement?

7            MR. KIMOTO: Yes, Your Honor. That does contain the

8    essential terms of the plea agreement as we have reviewed.

9    Thank you.

11:47AM 10           THE COURT: All right. And is that also your

11   understanding, Ms. Freeman?

12           THE DEFENDANT: Yes, Your Honor.

13           THE COURT: All right. I want to go over one matter

14   in particular with you and that is Paragraph 13 and your right

11:47AM 15   to appeal that you would be giving up. And I want to explain

16   to you that normally there are two ways that you can challenge

17   your conviction or sentence in Federal Court. One way is to

18   appeal to a court higher than me called the Ninth Circuit Court

19   of Appeals.

11:48AM 20           There's a second way which is if you believe your

21   conviction or sentence is unconstitutional in some way, then

22   you can come back to me in what's called a habeas petition

23   under Section 2255. So, there's two different ways you can

24   challenge: One, by going to a court higher than me or coming

11:48AM 25   back to me.

1          Now, pursuant to Paragraph 13 of the plea agreement,

2    you are waiving or giving up your right to appeal your sentence

3    to the Ninth Circuit Court of Appeals.  And there's only one

4    exception to that, and that is if -- after I determine the

11:48AM  5    guideline range to your case, you retain the right to appeal

6    any portion of your sentence that is greater than that

7    guideline range.  Otherwise, you're waiving or giving up your

8    right to appeal to the Ninth Circuit.  Do you understand that?

9          THE DEFENDANT:  Yes, Your Honor.

11:48AM 10          THE COURT:  And normally you would have the right to

11    come to me, as I said, and to challenge your conviction or

12    sentence.  So, you're also waiving or giving that right up

13    except in two circumstances.  The first circumstance is exactly

14    the same as your right to appeal, that is, if I sentence you in

11:49AM 15    excess of the guideline range for your crime; and the second is

16    based on a claim of ineffective assistance of counsel.  Do you

17    understand that?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  And the government is retaining its right

11:49AM 20    to appeal.  Do you understand?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Otherwise, you're giving up or waiving

23    your rights to either go to the Ninth Circuit or come back to

24    me to challenge your conviction or sentence.  Do you understand

11:49AM 25    that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  Do you also understand that

3    the stipulations in the plea agreement are only between you and

4    the government and that I am not bound by those stipulations?

11:49AM  5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And that I am not required to accept the

7    plea agreement but I'll wait until I get a presentence report

8    to determine whether or not to accept the plea agreement?  Do

9    you understand that?

11:49AM 10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  Now, I want to go over some

12   important rights with you that you would be giving up by

13   entering a plea of guilty here today.

14          First, do you understand under the constitution and

11:49AM 15   laws of the United States that you have a right to persist in

16   your not guilty plea and you are entitled to a trial by a jury

17   on the charges against you in the second superseding

18   indictment?

19          THE DEFENDANT:  Yes, Your Honor.

11:50AM 20          THE COURT:  And do you understand that at a trial you

21   would be presumed innocent and the government has the burden of

22   presenting evidence to prove you're guilty beyond a reasonable

23   doubt and that at no time would you have to prove that you are

24   not guilty?  Do you understand that?

11:50AM 25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And you would have to be found guilty at a

2    trial with 12 people unanimously agreeing that you were guilty

3    beyond a reasonable doubt.  Do you understand that?

4          THE DEFENDANT:  Yes, Your Honor.

11:50AM  5          THE COURT:  And at a trial, like at this stage, you

6    would have a right to assistance of counsel.  That is, you

7    would have an attorney to help represent you; and if you could

8    not afford an attorney, one would be given to you free of

9    charge.  Do you understand that?

11:50AM  10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  And at a trial you would have the right to

12   see and hear all the government witnesses and have them

13   questioned by your attorney.  Do you understand?

14         THE DEFENDANT:  Yes.

11:50AM  15         THE COURT:  You could object to evidence offered by

16   the government and you could offer evidence on your own behalf

17   and you could compel or force witnesses to come to court using

18   the Court's subpoena power.  Do you understand that?

19         THE DEFENDANT:  Yes, Your Honor.

11:51AM  20         THE COURT:  And you would have an absolute right to

21   testify at a trial, if you chose to do so; but you would also

22   have a constitutional right not to testify.  And if you

23   exercised that constitutional right and did not testify, the

24   jury could draw no inference or suggestion of guilt because you

11:51AM  25   did not testify.  Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Now, by entering a plea, if I accept your

3     plea, there will be no trial and you will have given up or

4     waived all of these rights that we just discussed.  Do you

11:51AM 5     understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And finally do you understand that if you

8     want to proceed today, you will have to give up or waive your

9     right not to incriminate yourself because I will ask you

11:51AM 10     questions about what you did that makes you guilty?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  You understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  Now, are you a U.S. citizen?

11:51AM 15          THE DEFENDANT:  Yes, I am.

16          THE COURT:  All right.  Do you understand that the

17     offense to which you are pleading guilty is a felony offense --

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  -- and that if you are adjudged guilty of

11:52AM 20     that felony offense, you could be deprived of valuable civil

21     rights, such as the right to hold public office, the right to

22     vote, the right to serve on a jury and the right to possess any

23     firearm or ammunition?  Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

11:52AM 25          THE COURT:  Now, are you currently charged with any

1 crimes in state -- in State Court?

2    THE DEFENDANT:  No.

3    THE COURT:  Are you on probation or parole for any

4 crimes in any State Court?

11:52AM 5    THE DEFENDANT:  No.

6    THE COURT:  Now, I want to go over some matters

7 relating to sentencing.  United States law does establish

8 detailed sentencing guidelines that apply to federal offenses.

9 The Supreme Court has recently told us those guidelines are not

11:52AM 10 mandatory but I must consider those guidelines when sentencing

11 you, along with a number of other factors set forth in the

12 statute 18 United States Code Section 3553(a).

13    Have you and Mr. Kimoto discussed these sentencing

14 guidelines and other sentencing factors and how they may apply

11:52AM 15 to you?

16    THE DEFENDANT:  Yes.

17    THE COURT:  And do you understand that I will not be

18 able to determine the guidelines for your case until after I

19 review a presentence report and both you and the government

11:53AM 20 have an opportunity to review the report and make any

21 objections to it and that I would rule on those objections?

22    THE DEFENDANT:  Yes, Your Honor.

23    THE COURT:  And do you understand that after it has

24 been determined what guidelines apply to your case, I will

11:53AM 25 consider these guidelines and the other sentencing factors and

1    I may impose a sentence that is more severe or less severe than

2    called for by the guidelines?

3                    THE DEFENDANT:  Yes, Your Honor.

4                    THE COURT:  And do you understand that if I impose a

11:53AM 5    sentence that is more severe than you had hoped or expected for

6    or more severe than called for by the guidelines, you will

7    still be bound by your plea agreement?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  Now, has anyone made any promise to you as

11:53AM 10    to what your sentence will be?

11                    THE DEFENDANT:  No.

12                    THE COURT:  Do you understand that if you are

13    sentenced to prison, a term of supervised release will follow;

14    and if you are found to violate conditions of supervised

11:53AM 15    release, you can be sent back to prison?

16                    THE DEFENDANT:  Yes, Your Honor.

17                    THE COURT:  And do you understand that in the federal

18    system parole has been abolished so that if you are sentenced

19    to prison, you will not be released on parole?

11:53AM 20                    THE DEFENDANT:  Yes, Your Honor.

21                    THE COURT:  All right.  Mr. Inciong, is either

22    restitution or forfeiture applicable in this case?

23                    MR. INCIONG:  No, Your Honor.

24                    THE COURT:  Okay.  Now, we're going to go back to an

11:54AM 25    area where we started; and that is the facts of this case.  And

1    I'm going to have Mr. Inciong first tell us what the elements

2    are of the offense for Count 1 of the second superseding

3    indictment.

4            MR. INCIONG:  Yes, Your Honor.  The elements are as

11:54AM   5    follows:  That there was an agreement between the defendant and

6    at least one other person to commit at least one crime as

7    charged in the indictment, in this case, distribution of

8    methamphetamine and, secondly, possession of methamphetamine

9    with intent to distribute; secondly that the defendant became a

11:54AM  10    member of the conspiracy knowing of at least one of its objects

11    and intending to help accomplish it.

12            Additionally for sentencing purposes, the government

13    would have to prove beyond a reasonable doubt that the amount

14    of methamphetamine at issue was, in fact, 50 grams or more.

11:54AM  15            THE COURT:  All right.  Mr. Kimoto, do you agree with

16    those essential elements of the offense?

17            MR. KIMOTO:  Yes, Your Honor.

18            THE COURT:  All right.  Mr. Inciong, if you could now

19    tell us the facts the government would be prepared to prove if

11:55AM  20    this case went to trial.

21            MR. INCIONG:  Yes, Your Honor.  At trial the United

22    States would provide testimony and other evidence to show the

23    following:  That from approximately November 17th, 2004, and

24    continuing up to and including April 25th, 2005, on five

11:55AM  25    separate occasions the defendant, Ms. Freeman, accepted

1  delivery of U.S. Postal Express Mail parcels containing crystal

2  methamphetamine, or ice, on behalf of Co-Defendant Kavekini

3  Narabe.

4       The defendant accepted delivery of the parcels at her

11:55AM  5  residence at 2627 Nakookoo Street, Apartment No. 6, in

6  Honolulu, as well as at Narabe's residence which was

7  1982 Kalakaua Avenue, Apartment C, in Honolulu.

8       The defendant was paid approximately 125 to $150 by

9  Defendant Narabe for each parcel that she delivered -- that she

11:56AM  10  accepted delivery of.

11       There would be further evidence to show that on or

12  about December 17th of 2005, Ms. Freeman accepted delivery of

13  an Express Mail parcel weighing approximately 16 pounds and

14  seven ounces delivered to 1982 Kalakaua Avenue, Apartment C,

11:56AM  15  and addressed to Kave N.  The defendant signed her name on the

16  delivery slip, which had a return address of 9593 Rainfall

17  Avenue in Las Vegas, Nevada.

18       Evidence would further be provided to show that on or

19  about April 25th -- I'm sorry -- April 21st, 2005, the

11:56AM  20  defendant accepted delivery of a parcel for Co-Defendant Narabe

21  at her residence, again, 2627 Nakookoo Street, No. 6.  This

22  parcel was similar to size and weight of others that she had

23  previously accepted.  Mr. Narabe came to her home that day,

24  picked up the parcel and paid Ms. Freeman $120.

11:56AM  25       Further evidence would show that on or about

1    April 25th of 2005, Ms. Freeman arrived home at her residence

2    at 2627 Nakookoo Street, Apartment 6, picked up an Express Mail

3    parcel from atop a desk outside the apartment and took it

4    inside the residence.

11:57AM  5         Ms. Freeman's mother had previously accepted delivery

6    of the parcel earlier that day at Ms. Freeman's request.  The

7    parcel was addressed to a Carma Swanson at 2627 Nakookoo

8    Street, No. 6.

9         This parcel had been searched previously prior to its

11:57AM 10   delivery pursuant to a federal search warrant and was found to

11   contain 3,117 grams of actual methamphetamine.

12        Later that same day, April 25th of 2005, evidence will

13   show that Mr. Narabe arrived at the defendant's place of

14   employment and inquired with her as to where the parcel was

11:57AM 15   that had been delivered earlier to her residence.  Ms. Freeman

16   told Mr. Narabe that the parcel was at her house and he could

17   pick it up there from her mother.

18        On each of these occasions, Ms. Freeman acted as part

19   of an agreement with Mr. Narabe and others to bring quantities

11:58AM 20   of crystal methamphetamine into the District of Hawaii via U.S.

21   mail.  This methamphetamine would then be further distributed

22   on the Island of Oahu.

23        Laboratory analysis of the substance found in the

24   parcel addressed to Ms. Freeman at her residence and delivered

11:58AM 25   there on April 25th would show that it was confirmed by

1    scientific analysis to be 3,117 grams of actual

2    methamphetamine.

3            THE COURT:  All right.  Thank you.

4            All right.  Ms. Freeman, did you understand what

11:58AM  5    Mr. Inciong just said?

6            THE DEFENDANT:  Yes, I did.

7            THE COURT:  All right.  And do you have any dispute

8    with what he said?

9            THE DEFENDANT:  No.

11:58AM  10            THE COURT:  All right.  Now, let me ask you this:  You

11    did know this person, Kavekini Narabe?

12            THE DEFENDANT:  Yes.

13            THE COURT:  How did you know that person?

14            THE DEFENDANT:  From working at Magoo's.

11:58AM  15            THE COURT:  From working at Magoo's?

16            THE DEFENDANT:  Uh-huh.

17            THE COURT:  That's a restaurant?

18            THE DEFENDANT:  Uh-huh.

19            THE COURT:  Okay.  You have to say "yes" or "no."

11:58AM  20            THE DEFENDANT:  Yes.

21            THE COURT:  All right.  And is this a person that

22    asked you to do something then?

23            THE DEFENDANT:  Yeah -- well, no, I asked him -- can I

24    explain?

11:59AM  25            THE COURT:  Yes.

1          THE DEFENDANT:  Okay.  I asked him -- I needed some

2      help financially and he told me that I could get his mail for

3      him and he would pay me money for it.

4          THE COURT:  All right.  Why did you go to him?

11:59AM 5          THE DEFENDANT:  No particular reason.

6          THE COURT:  All right.  And then is it accurate that

7      you were paid between 125 and $150 for each parcel?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  And how would you learn where

11:59AM 10     the -- did you learn when the parcel was coming before it came?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And how would you know that?

13         THE DEFENDANT:  He would tell me.

14         THE COURT:  He would tell you?

11:59AM 15         THE DEFENDANT:  Yes.

16         THE COURT:  And how were the parcels typically

17     delivered?

18         THE DEFENDANT:  By mail.

19         THE COURT:  Was it the type of mail you had to sign

11:59AM 20     for?

21         THE DEFENDANT:  Yes.

22         THE COURT:  So, it wasn't just regular mail?

23         THE DEFENDANT:  No.

24         THE COURT:  All right.  And it would come to your

11:59AM 25     house or his house?

1          THE DEFENDANT:  Yes -- well, first, his house.  After

2     a few times at his house, it came to my house.

3          THE COURT:  Okay.  And did you ever have any

4     discussions with him as to what was in the package?

11:59AM    5          THE DEFENDANT:  Yes.  I asked.

6          THE COURT:  And what did he tell you?

7          THE DEFENDANT:  Food from Fiji.

8          THE COURT:  Food from Fiji.

9          THE DEFENDANT:  Which is where he's from.

12:00PM  10          THE COURT:  Did you believe that?

11          THE DEFENDANT:  Sort of.

12          THE COURT:  Well, why did you think you were being

13     paid between 125 -- I'm sorry -- 125 and $150 to accept a

14     parcel at his house that said --

12:00PM  15          THE DEFENDANT:  Because he wasn't there at the time.

16     He was at work, and he didn't have anybody to get it for him.

17          THE COURT:  All right.  Did you ever come to believe

18     that there was something in those parcels other than food?

19          THE DEFENDANT:  No.

12:00PM  20          THE COURT:  You always believed it was food?

21          THE DEFENDANT:  Yes.

22          THE COURT:  You never thought --

23          THE DEFENDANT:  I never thought that it was anything

24     else.  It never really crossed my -- it sounds really stupid, I

12:00PM  25     know; but I never....

1          THE COURT:  All right.  Mr. Inciong, I'm not prepared

2     to go forward today with this, I mean, unless you have a

3     suggestion of any other questions asked; but I don't even think

4     we're at a point where deliberate ignorance really applies.

12:00PM  5          MR. INCIONG:  No.  That's fine, Your Honor.  The only

6     thing I would add is I had spoken to Mr. -- and I don't know if

7     this would make a difference or not; but what I had mentioned

8     to Mr. Kimoto was that, you know, it is sufficient if the

9     defendant believed it was some drug.  It doesn't -- she didn't

12:01PM 10     have to know it was specifically methamphetamine.

11          THE COURT:  All right.

12          MR. INCIONG:  Nor did she have to be -- specifically

13     ever be told by anyone that it was methamphetamine.  Now,

14     certainly we do not want to accept her plea if she believes

12:01PM 15     that she was not guilty; but if she believed or suspected

16     through, you know, whatever the circumstances were, obviously

17     we think that is sufficient.  But, you know, I don't know if

18     that can be reached today or not.  I don't know.

19          THE COURT:  All right.  Well, I don't want to rush

12:01PM 20     this and rush Mr. Kimoto and certainly not Ms. Freeman; but

21     what I've heard so far is that she believed it was food and had

22     no reason to believe it was anything else.

23          THE DEFENDANT:  Well, Your Honor --

24          THE COURT:  Yes.

12:01PM 25          THE DEFENDANT:  -- I suspected that it was; but I did

1    not know, you know?  I don't know how to explain that.  I don't

2    know why it sounds how it does but....

3             THE COURT:  Well, I earlier asked you if you always

4    believed it was food; and you said yes.

12:01PM  5             THE DEFENDANT:  Well, I suspected there was drugs in

6    it.

7             THE COURT:  Okay.  Tell me why you suspected there was

8    drugs in it.

9             THE DEFENDANT:  No particular -- I don't know.

12:02PM  10             THE COURT:  Well, there must have been some

11    circumstances, Ms. Freeman, that led you to suspect there were

12    drugs in the parcel.  I need to understand what that is.

13             THE DEFENDANT:  Might have been the -- yeah, maybe the

14    money.

12:02PM  15             THE COURT:  The fact you were being paid --

16             THE DEFENDANT:  Yeah.

17             THE COURT:  -- money to accept the parcels?

18             THE DEFENDANT:  Yeah, along with the fact that he

19    wasn't there and that it was so much money just to be there for

12:02PM  20    the mail.

21             THE COURT:  All right.  At what point in time did you

22    suspect -- is it correct that you accepted five parcels?

23             THE DEFENDANT:  Yes.

24             THE COURT:  At what point in time among those five

12:02PM  25    parcels did you suspect it was drugs, the first parcel, the

1    last parcel, somewhere in between?

2           THE DEFENDANT:  Well, I would say the last.

3           THE COURT:  The last parcel?

4           THE DEFENDANT:  Uh-huh.

12:03PM  5           THE COURT:  Is that the charged parcel, Mr. Inciong?

6           MR. INCIONG:  Yes, Your Honor, it is.

7           THE COURT:  Okay.  All right.  So, when you received

8    the parcel on April 25th of 2005, you had already accepted four

9    parcels?

12:03PM 10           THE DEFENDANT:  Yes.

11           THE COURT:  You were paid for each between 125 and

12    $150?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  You were told there was food; but by the

12:03PM 15    time the last one came, you suspected it was drugs?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right.  Is it fair to say that you

18    were aware there was a high probability that there were drugs

19    in those parcels?

12:03PM 20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  All right.  And you did nothing

22    independent to confirm or deny that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  All right.  Are both counsel satisfied

12:03PM 25    with her statement, reviewing it under a deliberate ignorance

1    jury instruction?

2            MR. INCIONG:  Your Honor, perhaps the Court could

3    question Ms. Freeman as to any knowledge or discussions she had

4    regarding Mr. Narabe and what he did for a living or if he

12:04PM  5    seemed to have additional sources of income other than -- I

6    know she said she worked with him at the restaurant.

7            THE COURT:  So, what Mr. Inciong is suggesting, did --

8    how well did you know Mr. Narabe?

9            THE DEFENDANT:  I just knew him from working at

12:04PM 10    Magoo's; and sometimes we would go out, like, to clubs.

11            THE COURT:  All right.

12            THE DEFENDANT:  The reason -- oh, this is -- could I

13    add?

14            THE COURT:  Yes.

12:04PM 15            THE DEFENDANT:  The reason why I asked -- you asked me

16    earlier -- him for money and why I thought he had money is

17    because every time we went out, he would buy -- he would pay

18    for everything.

19            THE COURT:  All right.

12:04PM 20            THE DEFENDANT:  He also worked, I guess, construction

21    or landscaping, something -- somewhere else besides Magoo's.

22            THE COURT:  All right.  Did there come a time when you

23    questioned whether the money he was spending so freely came

24    from drugs as opposed to from work?

12:04PM 25            THE DEFENDANT:  No.

1        THE COURT:  As of the last delivery, ma'am, did you

2   believe that there were drugs in that parcel or did you believe

3   there was food in the parcel?

4        THE DEFENDANT:  I believed there was drugs.

12:05PM  5        THE COURT:  All right.  Ms. Inciong?

6        MR. INCIONG:  Nothing further, Your Honor.  Thank you.

7        THE COURT:  Are you satisfied with that?

8        MR. INCIONG:  Yes.

9        THE COURT:  I mean, we can come back if you're not.

12:05PM 10   I'm not sure I can ask any other questions.  I think, though,

11   that under the record what we have is somebody who's being paid

12   between 125 and $150 to accept delivery of a parcel that, even

13   if naive at the beginning and believing it was food, came to

14   recognize by the last delivery that, in fact, she was

12:05PM 15   accepting -- accepting drugs.

16        MR. INCIONG:  If that is all true, the government is

17   satisfied.

18        THE COURT:  Is that accurate, Ms. Freeman?

19        THE DEFENDANT:  Yes, Your Honor.

12:05PM 20        THE COURT:  All right.

21        All right.  Mr. Kimoto, are you satisfied with that

22   proffer?

23        MR. KIMOTO:  Yes, Your Honor.

24        THE COURT:  Okay.  Ms. Freeman, are you sure you want

12:06PM 25   to enter a plea of guilty?

1          THE DEFENDANT:  Yes.

2          THE COURT:  You understand you can go to trial on this

3   charge?

4          THE DEFENDANT:  Yes.

12:06PM  5          THE COURT:  And you can present everything you said

6   here, if you wish, to a jury.  You understand that?

7          THE DEFENDANT:  (Defendant nods head.)  Yes, Your

8   Honor.  Sorry.

9          THE COURT:  All right.  Do you want some more time to

12:06PM  10  think about this?  I don't want to rush you, and I don't want

11  you to think you're being pressured to enter a plea of guilty.

12          What we are trying to figure out here is whether or

13  not there was sufficient facts for you to enter a plea of

14  guilty; but accepting what you said as true and seeing --

12:06PM  15  looking at you, I just want to make sure that you don't want

16  any more time to consider this matter or to discuss it with

17  your attorney further.

18          THE DEFENDANT:  I'm sure, Your Honor.

19          THE COURT:  All right.  You're prepared to plead

12:06PM  20  guilty?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  All right.  As to Count 1 of

23  the second superseding indictment, how do you plead, guilty or

24  not guilty?

12:06PM  25          THE DEFENDANT:  Guilty.

1        THE COURT:  All right.  It is the finding of the Court
2   that the defendant is competent to enter and understand the
3   proceedings -- I'm sorry -- is competent to understand the
4   proceedings and to enter a knowing and informed plea; that she
12:07PM 5   understands the charge, that is, the conspiracy charge, to
6   which she is pleading guilty; that she is entering a knowing
7   and voluntary plea and is not entering the plea because of any
8   force or threat and is not entering the plea because of any
9   promise, other than what is set forth in the plea agreement;
12:07PM 10  that the plea of guilty is supported by an independent basis in
11  fact containing each of the essential elements of the offense;
12  that she knows of all her rights associated with a trial,
13  understands the sentencing guidelines and the other factors the
14  Court must compose -- consider when imposing sentence along
12:07PM 15  with the maximum possible penalties.
16        And, ma'am, as you have acknowledged you are guilty, I
17  accept your guilty plea; and you are now adjudged guilty of
18  that offense.  But as I said, I will not accept the plea
19  agreement until I have an opportunity to review the presentence
12:07PM 20  report.  So, I am referring you to the U.S. Probation Office
21  for the preparation of that report.
22        All right.  Could we get a date for sentencing?
23        COURTROOM MANAGER:  Yes, Your Honor.  I gave them
24  July 10, but that's the Ninth Circuit conference.  So, can we
12:08PM 25  change that to July 17 at 1:30?

| | |
|---|---|
| 1 | THE COURT:  Both parties -- counsel available? |
| 2 | COURTROOM MANAGER:  July 17. |
| 3 | MR. INCIONG:  That's fine with the government, Your |
| 4 | Honor. |
| 12:08PM 5 | MR. KIMOTO:  That's July 17? |
| 6 | COURTROOM MANAGER:  July 17 at 1:30.  Is that okay? |
| 7 | MR. KIMOTO:  That's fine. |
| 8 | COURTROOM MANAGER:  Okay. |
| 9 | THE COURT:  All right.  Mr. Inciong, any objections to |
| 12:08PM 10 | Ms. Freeman staying out on bail under present conditions? |
| 11 | MR. INCIONG:  No, Your Honor. |
| 12 | THE COURT:  All right.  Ms. Freeman, I am going to let |
| 13 | you stay out on bail until the sentencing.  It is important |
| 14 | that you comply with all of the conditions -- |
| 12:08PM 15 | THE DEFENDANT:  Yes, Your Honor. |
| 16 | THE COURT:  -- of your bail.  If you fail to do so, |
| 17 | I'll be notified; and there's a very good chance that you would |
| 18 | then be incarcerated, okay? |
| 19 | THE DEFENDANT:  Yes, sir. |
| 12:08PM 20 | THE COURT:  So, it's important you do what you have to |
| 21 | do to stay clean and to report to Pretrial Services the way |
| 22 | you've been so far, okay? |
| 23 | THE DEFENDANT:  Yes. |
| 24 | THE COURT:  All right.  Anything further? |
| 12:08PM 25 | MR. INCIONG:  No, Your Honor. |

39

1          MR. KIMOTO:  No, Your Honor.

2          THE COURT:  All right.  Thank you.

3      (Proceedings concluded at 12:09 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     COURT REPORTER'S CERTIFICATE

2    I, Sharon Ross, Official Court Reporter, United

3 States District Court, District of Hawaii, do herby certify

4 that the foregoing is a correct transcript from the record of

5 proceedings in the above-entitled matter.

6    DATED at Honolulu, Hawaii, August 9, 2006.

7

8       /s/Sharon Ross

9       SHARON ROSS

10      CSR 432, RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25